**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**LUIS CRUZ**                                                                                     **PETITIONER**

**v.**                                         **CIVIL ACTION NO. 5:14cv48-DCB-MTP**

**BARBARA WAGNER**                                                        **RESPONDENT**

**REPORT AND RECOMMENDATIONS**

THIS MATTER is before the court on the *pro se* Petitioner of Luis Cruz for a writ of habeas corpus under 28 U.S.C. § 2241. The undersigned, having carefully considered the parties' submissions and the applicable law, recommends that the Petition [1] be DENIED.

**BACKGROUND**

Petitioner Luis Cruz was sentenced to a term of eighty-seven (87) months and three (3) years of supervised release for conspiracy to possess with the intent to distribute more than five (5) kilograms of cocaine on July 27, 2009, in the United States District Court for the Southern District of Florida.[1] At the time Petitioner initiated this action, he was incarcerated at the Adams County Correctional Center in Natchez, Mississippi.[2] Since that time, Petitioner has been released from federal custody.[3]

The Bureau of Prisons ("BOP") uses a system of Public Safety Factors as an aid to determine the level of security necessary for a particular inmate in order to insure the public's protection. *See* BOP Program Statement 5100.08, Ch. 5, pp. 8-11. The BOP assigned Petitioner a Public Safety

---

[1]*See* Public Information Inmate Data [7-1].

[2]*See* Petition [1] at 1.

[3]*See* Notice of Petitioner Status [10].

1

Factor ("PSF") of "Deportable Alien." This PSF is assigned to inmates who are not citizens of the United States. *See* BOP Program Statement 5100.08, Ch. 5, p. 9. The designation of "Deportable Alien" requires an inmate be housed in an institution with a security level of no less than Low.[4]

In his Petition, Petitioner argues that he is a non-deportable alien and, therefore, should not be subject to increased security measures. According to Petitioner, he will not be deported because he is Cuban. He cites to the BOP Program Statement 8120.02, Ch. 5, p. 6, which states: "It has been determined that Cubans (Mariels and non-Mariels) cannot be removed from the United States, and therefore should be considered for assignment with [Federal Prison Industries]." Petitioner argues that the BOP has wrongfully (1) prohibited him from being placed in a minimum security prison, (2) prohibited him from participating in Federal Prison Industries, (3) prohibited him from participating in a residential drug abuse program ("RDAP"), (4) prohibited him from participating in a residential reentry center ("RRC"), (5) prohibited him from being transferred to a facility closer to his family, and (6) prohibited him from being reunited with his family at the earliest possible time.

Petitioner argues that his incarceration at the Adams County Correctional Complex ("ACCC") contravened the letter and sprit of Program Statement 8120.02, Ch. 5, p. 6 and that this constituted a violation of his rights to procedural and substantial due process.

## ANALYSIS

As an initial matter, the Court must determine whether Petitioner has properly brought this action as a habeas corpus petition. When an action challenges the fact or duration of an inmate's

---

[4] BOP institutions are classified into five security levels: Minimum, Low, Medium, High, and Administrative. *See* BOP Program Statement 5100.08, Ch. 1, p. 1.

confinement, it is a habeas corpus matter. *Jackson v. Torres*, 720 F.2d 877, 879 (5th Cir. 1983). On the other hand, an inmate's challenge to the conditions of confinement is properly pursued as a civil rights challenge under Section 1983 or *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See Cook v. Texas Dep't of Criminal Justice Transitional Planning Dep't.*, 37 F.3d 166, 168 (5th Cir. 1994).

As explained by the United States Court of Appeals for the Fifth Circuit, the distinction becomes "blurry" when an inmate challenges an unconstitutional condition of confinement or prison procedure that affects the timing of his release from custody. *Carson v. Johnson*, 112 F.3d 818, 820-21 (5th Cir. 1997). Thus, the Fifth Circuit "adopted a simple, bright-line rule for resolving such questions." *Id*. If a favorable determination of an inmate's claims would not automatically entitle the inmate to accelerated release, the proper vehicle is a civil rights suit. *Id*.

Petitioner is not seeking immediate or early release from custody. Instead, he is seeking a transfer to another facility where he may be eligible for entry into programs that could reduce his sentence. Petitioner has not alleged that a favorable determination would automatically entitle him to a speedier release from custody. Thus, the proper vehicle for raising Petitioner's claims would be a civil rights suit. *Id; see also, Boyce v. Ashcroft*, 251 F.3d 911, 914 (10th Cir. 2001) ("Prisoners who raise constitutional challenges to other prison decisions–including transfers to administrative segregation, exclusion from prison programs, or suspension of privileges, e.g., conditions of confinement, must proceed under section 1983 or *Bivens*.").

Because Petitioner does not meet the bright line test established by the Fifth Circuit–that a favorable determination will automatically entitle him to accelerated release–Petitioner cannot pursue these claims in a Section 2241 petition.

3

Further, to the extent Petitioner has presented civil rights claims, any request for injunctive relief is moot, as the record reflects that he is no longer incarcerated. *See Brown v. Felts*, 128 Fed. App'x 345, 346 (5th Cir. 2005) (holding that *Bivens* plaintiff's release from a federal correctional facility rendered moot his requests for declaratory and injunctive relief).

Even if the Court were to consider the merits of Petitioner's arguments, he has nonetheless failed to assert a violation of a constitutionally protected right entitling him to relief pursuant to *Bivens*. In order to succeed on a *Bivens* claim, a plaintiff must show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of Federal law. *Hessbrook v. Lennon*, 777 F.2d 999, 1003 (5th Cir. 1985).

As previously discussed, Petitioner argues that because he is not deportable, he should be transferred to a facility where he would have an opportunity to participate in certain programs and receive certain benefits. Petitioner claims that the refusal to transfer him constitutes a violation of his rights afforded by the Due Process Clause.

According to the BOP Program Statement 5100.08, Ch. 5, p. 9, the PSF of "Deportable Alien" applies to:

> A male or female inmate who is not a citizen of the United States. All long-term detainees will have this PSF applied. When applied, the inmate or long-term detainee shall be housed in at least a Low security level institution.
>
> The PSF shall not be applied, or shall be removed when the U.S. Immigration and Customs Enforcement (ICE) or the Executive Office for Immigration Review (EOIR) have determined that deportation proceedings are unwarranted or there is a finding not to deport at the completion of deportation proceedings. The Institution Hearing Program CMA of NO IHP or IHP CMP ND will then be applied. Additionally, the PSF shall not be applied if the inmate has been naturalized as a United States citizen.

The BOP's decision to classify Petitioner as a "Deportable Alien," despite the fact that he will not be deported, does not give rise to a constitutional claim. *See e.g., Perez v. Lappin*, 672 F. Supp. 2d

35 (D.D.C. 2009) (holding that a "Deportable Alien" PSF as applied to a Cuban did not violate the petitioner's constitutional rights or violate the Administrative Procedures Act); *see also*, *Phuong Dong Duong v. Martin*, 2014 WL 1665012, at *2 (S.D. Miss. April 25, 2014) (holding that petitioner's security classification of "Deportable Alien" did not implicate any constitutional interest).

Petitioner claims that he has been deprived of liberty without due process because the BOP refuses to transfer him to another facility. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted). In determining whether there has been a due process violation, courts consider (1) whether the party was deprived of a liberty or property interest protected by the Due Process Clause and, if so, (2) whether the party was deprived of that protected interest without constitutionally adequate process. *LaCroix v. Marshall County*, 409 Fed. App'x. 794, 803 (5th Cir. 2011).

Protected liberty interests "are generally limited to state-created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). A prisoner's liberty interest protected by the Due Process Clause is "generally limited to freedom from restraint which . . . imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). The protection afforded by the Due Process clause does not extend to every adverse or unpleasant condition experienced by an inmate. *Madison*, 104 F.3d at 767.

Prison officials have discretion over inmate classifications, and inmates have no legitimate due process claim regarding these decisions. *See Moody v. Daggett*, 429 U.S. 78, 88 (1976). The

United States Supreme Court has "rejected the notion that every state action carrying adverse consequences for prison inmates automatically activates a due process right . . . . The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system." *Id*.

An inmate's classification and the resulting ineligibility for certain BOP programs do not impose an atypical and significant hardship. *See Becerra v. Miner*, 248 Fed. App'x. 368, 370 (3rd Cir. 2007) ("Being classified with a PSF of deportable alien and its resulting consequences of disqualification for certain programs, as with any other security classification, is not outside what a prisoner may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law."). Moreover, it is well settled that inmates do not have a constitutionally protected right to serve a sentence in any particular institution. *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996).

In Petitioner's Reply [8], he raises a claim based on the Equal Protection Clause for the first time. Claims raised for the first time in a reply brief need not be considered. *See United States v. Sangs*, 31 Fed. App'x. 152 (5th Cir. 2001); *see also Mermikwu v. Gonzales*, 2007 WL 530228, at *1 (N.D. Tex. Feb. 21, 2007). Therefore, the Court should decline to consider this claim.

Even if Petitioner's equal protection claim were considered, it is without merit. To state an equal protection claim, a plaintiff's allegations must satisfy two prongs: (1) that he received treatment different from that received by similarly situated individuals and (2) that the unequal treatment stemmed from a discriminatory intent. *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir 2001). Petitioner complains that Cubans in other facilities are afforded opportunities for benefits that are not available at ACCC. However, this is not the relevant comparison, because prisoners at different facilities are not "similarly situated" for equal protection purposes. *See Hill v. Stephens*,

2009 WL 1808596, at *2 (E.D. La. June 18, 2009). "Any attempt to compare programs between and among different prisons where all of these varying factors are present is like the proverbial comparison of apples to oranges." *Roubideaux v. North Dakota Dept. of Corrections*, 570 F.3d 966, 976 (8th Cir. 2009) (quotations and citation omitted).

Even if the Court assumes, *arguendo*, that Petitioner has satisfied the similarly situated requirement, he is still required to show that the alleged difference in treatment was the result of intentional or purposeful discrimination. Petitioner has not pointed to any discriminatory impetus behind the refusal to transfer him from ACCC.

Accordingly, for these reasons, the undersigned finds that Petitioner is not entitled to any form of relief.

## **RECOMMENDATIONS**

For the reasons stated above, Petitioner cannot pursue these claims in a petition for writ of habeas corpus. Further, even if Petitioner had filed his claims as a civil rights action, the same could not be maintained. Accordingly, the undersigned recommends that the relief sought in the Petition for Writ of Habeas Corpus [1] be denied and that this case be dismissed with prejudice.

## **NOTICE OF RIGHT TO OBJECT**

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party. The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed

7


findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

THIS, the 12th day of July, 2016.

                                                s/ Michael T. Parker
                                                United States Magistrate Judge